IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVADEL CNS PHARMACEUTICALS LLC and FLAMEL IRELAND LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 25-09 (GBW) |
| JAZZ PHARMACEUTICALS, INC. and JAZZ PHARMACEUTICALS IRELAND LIMITED, | ) ) ) ) | |
| Defendants. | ) ) | |

## JAZZ'S ANSWER TO COMPLAINT, DEFENSES, AND COUNTERCLAIMS

Defendants Jazz Pharmaceuticals, Inc. and Jazz Pharmaceuticals Ireland Limited (together "Defendants" or "Jazz") hereby submit this Answer, Affirmative Defenses, and Counterclaims ("Answer") to the Complaint filed by Plaintiffs Avadel CNS Pharmaceuticals, LLC and Flamel Ireland Limited (together "Plaintiffs" or "Avadel"). Pursuant to Federal Rule of Civil Procedure 8(b)(3), Defendants deny all allegations in Avadel's Complaint except those specifically admitted below:

1.      Avadel is a biopharmaceutical company focused on transforming medicines to help patients in need. Its approach includes applying innovative solutions to the development of medications that address the challenges patients face with current treatment options. Avadel has been achieving success with such reformulations for years, going back to a 2006 FDA approval of Flamel's controlled release blood pressure treatment, Coreg CR. One of Avadel's successes is its development of LUMRYZ®. LUMRYZ is an extended-release sodium oxybate medication approved by the FDA on May 1, 2023 as the first and only once-at-bedtime treatment for cataplexy or excessive daytime sleepiness (EDS) in adults with narcolepsy.

**ANSWER:** Jazz admits on information and belief that Avadel's LUMRYZ® is an extended-release sodium oxybate medication approved by the FDA on May 1, 2023 to treat cataplexy or excessive daytime sleepiness (EDS) in adults with narcolepsy with once-at-bedtime

administration, and except as expressly admitted, Jazz denies, or otherwise lacks knowledge or information sufficient to form a belief as to the truth of, the allegations of Paragraph 1.

2.     Avadel's expertise and scientific research and development has resulted in Avadel being awarded multiple U.S. patents for its innovations. Defendants Jazz Pharmaceuticals, Inc. and Jazz Pharmaceuticals Ireland Limited's (collectively "Defendants" or "Jazz") are infringing – and inducing others to infringe – Avadel's patent rights by way of the importation, sale, offer for sale, and promotion of Jazz's product XYWAV®, which is used for the treatment of, among other things, idiopathic hypersomnia.

**ANSWER:** Jazz admits that its XYWAV® product is approved to treat, among other things, idiopathic hypersomnia, and admits on information and belief that Avadel owns U.S. patents, but Jazz denies that Jazz is infringing or inducing others to infringe any patent purportedly owned by Avadel, and except as expressly admitted, Jazz denies, or otherwise lacks knowledge or information sufficient to form a belief as to the truth of, the allegations of Paragraph 2.

3.     This is an action for patent infringement under the Patent Act, 35 U.S.C. §§ *et seq.*, including 35 U.S.C. § 271, to obtain damages resulting from Jazz's infringement of at least one claim of Avadel's United States Patent No. 12,167,991 (the "'991 patent").

**ANSWER:**  Jazz admits that the Complaint purports to allege an action for patent infringement under the Patent Act, 35 U.S.C. §§ *et seq.*, including 35 U.S.C. § 271, to obtain damages.  Jazz denies that Jazz has infringed any claims of any patent purportedly owned by Avadel, including the '991 patent, and denies that Avadel is entitled to any damages, and except as expressly admitted, Jazz denies the allegations of Paragraph 3.

## PARTIES

4.     Plaintiff Avadel CNS Pharmaceuticals, LLC is a limited liability company organized and existing under the laws of the State of Delaware and has its principal place of business at 16640 Chesterfield Grove Road, Suite 200, Chesterfield, Missouri 63005.

**ANSWER:**  On information and belief Jazz admits the allegations of Paragraph 4.

5.     Plaintiff Flamel Ireland Limited ("Flamel") is a limited company organized and existing under the laws of the Republic of Ireland and has its principal place of business at Ten Earlsfort Terrace, Dublin 2, D02 T380 Ireland.

**ANSWER:** On information and belief Jazz admits the allegations of Paragraph 5.

6.      On information and belief, Defendant Jazz Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 3170 Porter Drive, Palo Alto, California 94304.

**ANSWER:** Jazz admits the allegations of Paragraph 6.

7.      On information and belief, Defendant Jazz Pharmaceuticals Ireland Limited is a corporation organized and existing under the laws of Ireland, having a principal place of business at Waterloo Exchange, Waterloo Road, Dublin, Ireland 4.

**ANSWER:** Jazz admits the allegations of Paragraph 7.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** The allegations in Paragraph 8 state legal conclusions to which no response is required. To the extent a response is required, Jazz does not dispute subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Jazz Pharmaceuticals, Inc. because, upon information and belief, Jazz Pharmaceuticals, Inc. is a company organized and existing under the laws of Delaware and maintains a registered agent for service of process in Delaware, at 1209 Orange Street, Wilmington, Delaware, 19801. In addition, this Court has personal jurisdiction over Jazz Pharmaceuticals, Inc. because, on information and belief, Jazz Pharmaceuticals, Inc. regularly transacts business in Delaware, has derived substantial revenue from sales of pharmaceutical products in Delaware, and markets XYWAV in Delaware. On information and belief, Jazz Pharmaceuticals, Inc. has consented to jurisdiction in Delaware in one or more prior cases arising out of its manufacture, use, offer for sale, sale and/or importation of pharmaceutical products, including cases that it initiated as the plaintiff.

**ANSWER:** Jazz admits that Jazz Pharmaceuticals, Inc. is a company organized and existing under the laws of Delaware and maintains a registered agent for service of process in Delaware, at 1209 Orange Street, Wilmington, Delaware, 19801. The remaining allegations in Paragraph 9 state legal conclusions to which no response is required. To the extent a response is required, Jazz does not dispute that it is subject to personal jurisdiction in Delaware for purposes of this action only. Except as expressly admitted, Jazz denies the allegations of Paragraph 9.

10.    This Court has personal jurisdiction over Defendant Jazz Pharmaceuticals Ireland Limited because it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court in Delaware. On information and belief, Jazz Pharmaceuticals Ireland Limited is in the business of, *inter alia*, developing, manufacturing, marketing, offering for sale, and selling pharmaceutical products including XYWAV throughout the United States, including within this District, either on its own or through its affiliates/subsidiaries. Therefore, Defendant Jazz Pharmaceuticals Ireland Limited transacts business within the State of Delaware related to Plaintiffs' claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

**ANSWER:**  The allegations in Paragraph 10 state legal conclusions to which no response is required.  To the extent a response is required, Jazz does not dispute that it is subject to personal jurisdiction in Delaware for purposes of this action only.  Except as expressly admitted, Jazz denies the allegations of Paragraph 10.

11.    Further, to the extent personal jurisdiction does not exist over Jazz Pharmaceuticals Ireland Limited in Delaware, this Court has personal jurisdiction over it under Federal Rule of Civil Procedure 4(k)(2) because Jazz Pharmaceuticals Ireland Limited is not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction over it is consistent with the United States Constitution and laws.

**ANSWER:**  The allegations in Paragraph 11 state legal conclusions to which no response is required.  To the extent a response is required, Jazz does not dispute that it is subject to personal jurisdiction in Delaware for purposes of this action only.  Except as expressly admitted, Jazz denies the allegations of Paragraph 11.

12.    Venue is proper in this District under 28 U.S.C. § 1400(b) with respect to Jazz Pharmaceuticals, Inc. at least because, on information and belief, Jazz Pharmaceuticals, Inc. is a corporation organized and existing under the laws of Delaware and therefore resides in Delaware for purposes of venue.

**ANSWER:**  Jazz admits that Jazz Pharmaceuticals, Inc. is a corporation organized and existing under the laws of Delaware.  The remaining allegations in Paragraph 12 state legal conclusions to which no response is required.  To the extent a response is required, Jazz does not challenge venue for purposes of this action only.  Except as expressly admitted, Jazz denies the allegations of Paragraph 12.

13.    Venue is proper in this Court under 28 U.S.C. § 1391(c) with respect to Jazz Pharmaceuticals Ireland Limited, at least because, on information and belief, Jazz Pharmaceuticals Ireland Limited is not resident in the United States and may be sued in any judicial district.

**ANSWER:**  The allegations in Paragraph 13 state legal conclusions to which no response is required.  To the extent a response is required, Jazz does not challenge venue for purposes of this action only.  Except as expressly admitted, Jazz denies the allegations of Paragraph 13.

## THE '991 PATENT

14.    The '991 patent, entitled "Gamma-Hydroxybutyrate Compositions Having Improved Pharmacokinetics in the Fed State" (Exhibit 1 hereto), was duly and legally issued on December 17, 2024.  Flamel is the owner and assignee of the '991 patent.  Avadel CNS Pharmaceuticals, LLC is the exclusive licensee of the '991 patent.  The parties collectively hold all rights, title, and interest in and to the '991 patent.

**ANSWER:**  Jazz admits that the '991 patent is entitled "Gamma-Hydroxybutyrate Compositions Having Improved Pharmacokinetics in the Fed State" and issued on December 17, 2024.  Jazz admits that Exhibit 1 appears to be a copy of the '991 patent.  Jazz admits on information and belief that Flamel purports to be the owner and assignee of the '991 patent and that Avadel CNS Pharmaceuticals, LLC purports to be the exclusive licensee of the '991 patent.  Except as expressly admitted, Jazz denies, or otherwise lacks knowledge or information sufficient to form a belief as to the truth of, the allegations of Paragraph 14.

15.    Claim 1 of the '991 patent recites:  A method of decreasing excessive daytime sleepiness in a human subject, the method comprising:
    orally administering a pharmaceutical composition comprising calcium oxbate, magnesium
        oxbate, and potassium oxbate,
    wherein the orally administering occurs only once nightly at least two hours after eating.

**ANSWER:**  Jazz admits that the text of claim 1 of the '991 patent recites:  "A method of decreasing excessive daytime sleepiness in a human subject, the method comprising:  orally administering a pharmaceutical composition comprising calcium oxbate, magnesium oxbate, and potassium oxbate, wherein the orally administering occurs only once nightly at least two hours after eating."  The meaning of the claim terms and the scope of claim 1 of the '991 patent

Case 1:25-cv-00009-GBW    Document 12    Filed 05/21/25    Page 6 of 34 PageID #: 201

are legal conclusions to which no answer is required. Except as expressly admitted, Jazz denies the allegations of Paragraph 15.

## JAZZ'S XYWAV PRODUCT

16.     XYWAV is an oral solution that contains salts of gamma-hydroxybutyrate. It is administered orally.

**ANSWER:** Jazz admits that XYWAV® is an oral solution that contains salts of gamma-hydroxybutyrate and is indicated to be administered orally, and except as expressly admitted, Jazz denies the allegations of Paragraph 16.

17.     According to the approved labeling for XYWAV, "XYWAV is a mixture of calcium oxybate, magnesium oxybate, potassium oxybate, and sodium oxybate (gamma-hydroxybutyrate)." Also according to the approved labeling, the inactive ingredients are purified water and sucralose. Also according to the approved labeling, each mL of XYWAV contains: 0.234 g calcium oxybate, $Ca(C4H7O3)2$; 0.096 g magnesium oxybate, $Mg(C4H7O3)2$; 0.13 g potassium oxybate, $K(C4H7O3)$; and 0.04 g sodium oxybate, $Na(C4H7O3)$ in dissociated form in the solution.

**ANSWER:** Jazz admits that the approved labeling for XYWAV®, last updated April 2023, states that "XYWAV is a mixture of calcium oxybate, magnesium oxybate, potassium oxybate, and sodium oxybate (gamma-hydroxybutyrate)." Jazz admits that the approved labeling for XYWAV® also states that purified water and sucralose are inactive ingredients and that each mL of XYWAV® contains 0.234 g calcium oxybate, $Ca(C4H7O3)2$; 0.096 g magnesium oxybate, $Mg(C4H7O3)2$; 0.13 g potassium oxybate, $K(C4H7O3)$; and 0.04 g sodium oxybate, $Na(C4H7O3)$ in dissociated form in the solution. Jazz refers to the approved labeling for XYWAV® for the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 17.

18.    Jazz received approval from the FDA on August 12, 2021 to market and sell XYWAV for use in the treatment of Idiopathic Hypersomnia ("IH") in adults.[1]

**ANSWER:**  Jazz admits that the FDA approved its supplemental new drug application for the new indication of Idiopathic Hypersomnia ("IH") in adults for XYWAV® on August 12, 2021. Jazz refers to the supplemental approval letter (available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2021/212690Orig1s006,021196Orig1s 036ltr.pdf) for the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 18.

19.    XYWAV is also approved for the treatment of cataplexy or excessive daytime sleepiness (EDS) in patients 7 years of age and older with narcolepsy.

**ANSWER:**  Jazz admits that XYWAV® is approved for the treatment of cataplexy or excessive daytime sleepiness (EDS) in patients 7 years of age and older with narcolepsy, and except as expressly admitted, Jazz denies the allegations of Paragraph 19.

## THE USE OF JAZZ'S XYWAV PRODUCT ALLEGEDLY INFRINGES THE '991 PATENT

20.    On information and belief, Jazz is currently marketing, manufacturing, distributing, using, offering for sale, selling, and/or importing XYWAV in the United States.[2]  The approved labeling for XYWAV recites that it is "Distributed By: Jazz Pharmaceuticals, Inc. Palo Alto, CA 94304."[3]

**ANSWER:**  Jazz admits that it is currently marketing, manufacturing, distributing, using, offering for sale, selling, and/or importing XYWAV® in the United States, and refers to the approved

---

[1]    FDA, *Supplemental Approval*  (Aug. 12, 2021), https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2021/212690Orig1s006,021196Orig1s 036ltr.pdf.

[2]    FDA, Highlights of Prescribing Information, XYWAV (Apr. 2023), https://www.accessdata.fda.gov/drugsatfda_docs/label/2023/212690s011lbl.pdf (hereinafter "XYWAV Prescribing Information").

[3]    *Id.*

labeling for Xywav® for the contents disclosed therein, and except as expressly admitted, Jazz

denies the allegations of Paragraph 20.

21.    On information and belief, under supplemental New Drug Application ("sNDA") No. 212690/S-006, Jazz has engaged and will engage in the commercial importation, offer for sale, use, and/or sale of XYWAV for use in the treatment of idiopathic hypersomnia.

**ANSWER:**  Jazz admits that it has engaged in the commercial importation, offer for sale,

and/or sale of  Xywav® for all FDA-approved indications including idiopathic hypersomnia,

which  is  an  approved  indication  under  supplemental  New  Drug  Application  ("sNDA")

No. 212690/S-006.  Except as expressly admitted, Jazz denies the allegations of Paragraph 21.

22.    XYWAV is being marketed and sold in the United States with a label including instructions for use as approved by FDA.

**ANSWER:**  Jazz admits that as required by law, Xywav® is accompanied by a label, which

has been approved by the FDA and refers to the label for the contents disclosed therein, and except

as expressly admitted, Jazz denies the allegations of Paragraph 22.

23.    The XYWAV Prescribing Information provides instructions for administering XYWAV.

**ANSWER:**  Jazz refers to the Xywav® Prescribing Information for the contents disclosed

therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 23.

24.    The XYWAV Prescribing Information encourages, recommends, instructs, and/or promotes  administration  of  XYWAV  to  patients  with  disorders  treatable  with  gamma-hydroxybutyrate, including idiopathic hypersomnia.

**ANSWER:**  Jazz refers to the Xywav® Prescribing Information for the contents disclosed

therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 24.

25.    The XYWAV Prescribing Information recommends that in adult patients with idiopathic hypersomnia, "XYWAV can be administered as a twice or once nightly regimen in adults."  For once-nightly dosing, the XYWAV Prescribing Information recommends: "Initiate dosage at 3 g or less per night orally, as one dose.  Titrate to effect in increments of up to 1.5 g per night per week, up to 6 g total nightly dose."  Jazz therefore encourages, recommends, instructs, and/or promotes the administration of XYWAV once-nightly orally at dosages between 1.5 g per night up to 6.0 g per night.

**ANSWER:** Jazz admits that the quoted language appears in the XYWAV® Prescribing Information and refers to the XYWAV® Prescribing Information for the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 25.

26.     Jazz markets XYWAV for use in treating at least the following symptoms of idiopathic hypersomnia:  excessive daytime sleepiness, sleep inertial, cognitive impairment, and long sleep time.  Jazz thus encourages, recommends, instructs, and/or promotes health care providers to prescribe XYWAV for use in a method of decreasing excessive daytime sleepiness in patients with idiopathic hypersomnia, and Jazz encourages, recommends, instructs, and/or promotes patients with idiopathic hypersomnia to take XYWAV as a method of decreasing excessive daytime sleepiness.[4]

**ANSWER:** Jazz admits that it owns the webpages cited in Paragraph 26 and refers to the webpages for the contents disclosed therein.  Except as expressly admitted, Jazz denies the allegations of Paragraph 26.

27.     Jazz's website includes promotional materials directed to the use of XYWAV for idiopathic hypersomnia, including a set of materials entitled "Now, IH Means I'm Here."[5] Those materials highlight that "XYWAV has been studied across several aspects of IH that may affect you," and highlights "Excessive daytime sleepiness (EDS)."  Jazz then promotes that in a clinical trial, "The average ESS score of people who continued XYWAV was 7 POINTS LESS than for people who stopped taking XYWAV—for significantly less daytime sleepiness."

**ANSWER:** Jazz admits that it owns the webpage cited in Paragraph 27, and admits that the quoted language appears in the cited webpage and refers to the webpage for the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 27.

28.     The XYWAV Prescribing Information recommends to health care providers to "Advise the patient and/or caregiver to read the FDA-approved patient labeling (Medication Guide and Instructions for Use)."  The XYWAV Medication Guide and Instructions for Use are a part of the XYWAV Prescribing Information.  Jazz also links to the XYWAV Medication Guide and

---

[4] *See, e.g.*, Jazz Pharmaceuticals, *Xywav Idiopathic Hypersomnia (IH)*, https://www.xywav.com/idiopathic-hypersomnia (last visited Dec. 17, 2024); Jazz Pharmaceuticals, *What is XYWAV?*, https://www.xywav.com/idiopathic-hypersomnia/what-is-xywav (last visited Jan. 3, 2025).

[5] Jazz Pharmaceuticals, *NOW IH MEANS I'M HERE*, https://www.xywav.com/pdf/XYWAV_ IH_Brochure.pdf (last visited Jan. 3, 2025).

Instructions for Use on its website, www.xywav.com.[6] The Medication Guide instructs patients to read the XYWAV Medication Guide carefully and to read the Instructions for Use at the end of the Medication Guide for detailed instructions on how to take XYWAV.

**ANSWER:** Jazz admits that the quoted language appears in the XYWAV® Prescribing Information and refers to the XYWAV® Prescribing Information for the contents disclosed therein. Jazz admits that the XYWAV® Medication Guide and Instructions for Use are a part of the XYWAV® Prescribing Information and that links to the XYWAV® Medication Guide and Instructions for Use can be found on www.xywav.com, which Jazz owns, and refers to each for the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 28.

29.    The XYWAV Medication Guide instructs patients who have been prescribed XYWAV once-nightly to take "Take your XYWAV dose at bedtime . . . ." The Instructions for Use for once-nightly dosing instruct patients to "Drink all of the XYWAV dose while sitting in bed. Put the cap back on the pharmacy container and immediately lie down to sleep." The Instructions for Use provide step by step details of how to perform "1 time a night dosing."

**ANSWER:** Jazz admits that the quoted language appears in the XYWAV® Medication Guide and Instructions for Use, and refers to each for the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 29.

30.    The XYWAV Prescribing Information instructs that XYWAV should be administered "at least 2 hours after eating." The XYWAV Prescribing Information instructs health care providers to "Inform patients to administer XYWAV at least 2 hours after eating." The XYWAV Medication Guide instructs patients and caregivers to "Wait at least 2 hours after eating before taking or giving XYWAV."

**ANSWER:** Jazz admits that the quoted language appears in the XYWAV® Prescribing Information and XYWAV® Medication Guide and refers to each for the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 30.

## DEFENDANTS' KNOWLEDGE OF THE '991 PATENT

31.    Upon information and belief, Jazz is aware of the '991 patent at least because Jazz is aware of and monitors Avadel's patent portfolio. Jazz has admitted to regularly monitoring

---

[6] *Medication Guide XYWAV®*, https://pp.jazzpharma.com/pi/xywav.en.MG.pdf (last visited Jan. 3, 2025).

Avadel's patent filings. *See Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, C.A. No. 21-691-GBW, D.I. 595 at 119-20, (D. Del. May 1, 2024) (testimony from P.J. Honerkamp, Jazz's Senior Vice President and Business Unit Head for the Sleep Business, "Q. Legal would monitor the patents Avadel was publishing? A. Yes."); *see also Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, C.A. No. 21-691-GBW, D.I. 597 at 692, (D. Del. May 1, 2024) (testimony from Phillip McGarrigle, Jazz's Senior IP Counsel, "Q. In your work at Jazz, do you have any responsibility for monitoring Avadel's patent portfolio? A. Yes."). Further, Jazz has repeatedly disclosed published Avadel patents and patent applications, including some related to the '991 patent, in Information Disclosure Statements ("IDS") with the U.S. Patent and Trademark Office ("USPTO") during the prosecution of its own patents. Jazz disclosed two Avadel U.S. patents and patent publications along with four Avadel international patents and publications [7] in an Information Disclosure Statement filed with the USPTO in Jazz's U.S. Patent Appl. No. 17/118,041 (which became U.S. Patent No. 11,077,079 (the "'079 patent")) on December 21, 2020. *See* '079 patent IDS filed Dec. 21, 2020; *see also* U.S. Patent No. 11,247,782 (the "'782 patent") IDS filed Mar. 30, 2021 (same); U.S. Patent No. 11,364,215 (the "'215 patent") IDS filed Apr. 9, 2021 (same). Jazz disclosed fifteen additional Avadel U.S. patents and patent publications along with two additional Avadel international patent publications [8] in Information Disclosure Statements filed with the USPTO in Jazz's '079 patent, '782 patent, and '215 patent on April 27, 2021. *See* '079 patent IDS filed Apr. 27, 2021; '782 patent IDS filed Apr. 27, 2021; '215 patent IDS filed Apr. 27, 2021. During the prosecution of recent patent applications, Jazz disclosed eighteen Avadel U.S. patents and patent publications along with six international patents and patent publications [9] in Information Disclosure Statements filed with the USPTO. *See* U.S. Patent Appl. No. 17/860,498 IDS filed Sept. 5, 2024; U.S. Patent Appl. No. 18/699,363 IDS filed Oct. 18, 2024; U.S. Patent Appl. No. 18/652,039 IDS filed July 1, 2024.

      **ANSWER:** Jazz admits that the quoted testimony is present in the trial transcripts from

*Jazz Pharmaceuticals, Inc. v. Avadel CNS Pharmaceuticals, LLC*, C.A. No. 21-691- GBW (D.

---

[7]    Jazz disclosed: U.S. Patent No. 10,272,062; U.S. Patent Pub. No. 2018/0021284; European Patent Nos. 0709087 and 1434572; International Patent Pub. Nos. WO 2005/099671 and WO 2018/015563.

[8]    Jazz disclosed: U.S. Patent Nos. 10,736,866; 10,952,986; 10,973,795; and 10,925,844; U.S. Patent Pub. Nos. 2019/0183806; 2019/0183836; 2019/0269640; 2019/0269641; 2019/0274990; 2019/0282532; 2020/0197347; 2020/0276142; 2020/0360293; 2020/0360319; 2020/0368187; International Patent Pub. Nos. WO 2019/123269 and WO 2020/178695.

[9]    Jazz disclosed: U.S. Patent Nos. 10,272,062; 10,736,866; 10,952,986; 10,973,795; 10,925,844; 11,065,224; U.S. Patent Pub. Nos. 2018/0021284; 2019/0183836; 2019/0269640; 2019/0269641; 2019/0274990; 2019/0282532; 2020/0197347; 2020/0276142; 2020/0360293; 2020/0360319; 2020/0368187; European Patent Nos. EP 0709087 and 1434572; International Patent Pub. Nos. WO 2005/099671; WO 2018/015563; WO 2019/123269; WO 2020/178695.

Del.). Jazz refers to the cited Information Disclosure Statements for the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 31.

32. The '991 patent is related to U.S. Patent 10,925,844 and Avadel's U.S. Patent Pub. Nos. 2020/0276142; 2020/0360319; and 2020/0368187; each independently disclosed in several Jazz Information Disclosure Statements.

**ANSWER:** Jazz admits that the '991 patent is purportedly related to U.S. Patent 10,925,844 and U.S. Patent Pub. Nos. 2020/0276142; 2020/0360319; and 2020/0368187, refers to the Information Disclosure Statements submitted in the prosecution of issued patents and patent applications assigned to Jazz for the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 32.

33. Further, the application leading to the '991 patent, U.S. Appl. No. 18/758,344, became public on October 24, 2024, as U.S. Publication No. 2024/0350437. The final claims and notice of allowance of the '991 patent became public as of that same date. The fact that the '991 patent would issue became public as of the October 31, 2024 issue fee payment.

**ANSWER:** Jazz admits that according to the United States Patent and Trademark Office Patent Center website, U.S. Publication No. 2024/0350437 was purportedly published on October 24, 2024. Jazz admits that, according to the United States Patent and Trademark Office Patent Center website, an Issue Fee Payment was purportedly filed in 18/758,344 on October 31, 2024. Except as expressly admitted, Jazz denies, or otherwise lacks knowledge or information sufficient to form a belief as to the truth of, the allegations of Paragraph 33.

34. Given Jazz's pattern and practice of closely monitoring Avadel's patent application publications as set forth above, and given the public disclosure of the claims of the '991 patent on October 24, 2024 and the disclosure that the issue fee was paid on October 31, 2024 date, Avadel alleges, on information and belief, that Jazz has been aware of the claims of the '991 Patent since at least October 31, 2024.

**ANSWER:** Jazz denies, or otherwise lacks knowledge or information sufficient to form a belief as to the truth of, the allegations of Paragraph 34.

35. Further, Jazz is aware of the '991 patent because Avadel, through its counsel, sent a notice letter to Jazz on December 17, 2024 (Exhibit 2 hereto), informing Jazz of the existence of

the '991 patent. That notice letter further set forth a representative claim of the '991 patent and alerted Jazz that its "continued making, using, selling, importing, or offering for sale of XYWAV with the XYWAV Label induces patients and/or healthcare providers to infringe at least" that same claim. Ex. 2 at 1. Avadel sent this notice letter by courier to Jazz's Executive Vice President and Chief Legal Officer, Neena M. Patil, and provided a copy by email to F. Dominic Cerrito, outside counsel known to represent Jazz with respect to intellectual property disputes concerning its oxybate portfolio. Despite this letter, Jazz continues to encourage, recommend, instruct, and/or promote health care providers to prescribe and patients to take XYWAV for use in a method of decreasing excessive daytime sleepiness in idiopathic hypersomnia patients by orally administering XYWAV only once nightly at least two hours after eating in a manner that infringes at least claim 1 of the '991 patent.

**ANSWER:** Jazz admits that employees of Jazz as well as Jazz's outside counsel received Exhibit 2 on December 17, 2024, cites Exhibit 2 for the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 35.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 12,167,991

36.     Avadel incorporates each of the preceding paragraphs as if fully set forth herein.

**ANSWER:** Jazz incorporates its responses to the previous paragraphs as if fully set forth herein.

37.     On information and belief, Jazz is marketing and selling XYWAV in the United States with the XYWAV Prescribing Information (which includes the XYWAV Medication Guide and Instructions for Use). Through at least those documents, its marketing campaign, and its websites, including https://www.xywav.com/idiopathic-hypersomnia, Jazz encourages, recommends, instructs, and/or promotes health care providers to prescribe and patients to take XYWAV for use in a method of decreasing excessive daytime sleepiness in idiopathic hypersomnia patients by orally administering XYWAV only once nightly at least two hours after eating.

**ANSWER:** Jazz admits that as is required by law, XYWAV® is accompanied by the XYWAV® Prescribing Information (which includes the XYWAV® Medication Guide and Instructions for Use), which has been approved by the FDA and refers to the label for the contents disclosed therein. Jazz further admits that it owns the website https://www.xywav.com/idiopathic-hypersomnia, and refers to the contents disclosed therein, and except as expressly admitted, Jazz denies the allegations of Paragraph 37.

38.     Health care providers and/or patients directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '991 patent when patients are instructed to and do take XYWAV once-nightly for idiopathic hypersomnia in the manner instructed, taught, encouraged, and/or suggested by Jazz through the XYWAV Prescribing Information (which includes the XYWAV Medication Guide and Instructions for Use) and Jazz's marketing materials, including Jazz's websites.  Health care providers and/or patients have infringed and will continue to infringe by prescribing and/or using XYWAV in this manner.

**ANSWER:**  Jazz denies the allegations of Paragraph 38.

39.     Jazz indirectly infringes at least claim 1 of the '991 patent by, without authorization from Avadel, actively encouraging, instructing, and inducing others to use or practice in the United States infringing methods of treatment as set forth herein.

**ANSWER:**  Jazz denies the allegations of Paragraph 39.

40.     Jazz has actively induced infringement under 35 U.S.C. § 271(b), and will continue to actively induce infringement, of at least claim 1 of the '991 patent by way of the substance of the XYWAV Prescribing Information (which includes the XYWAV Medication Guide and Instructions for Use) and/or by way of its marketing of XYWAV.

**ANSWER:**  Jazz denies the allegations of Paragraph 40.

41.     On information and belief, despite Jazz's knowledge of the '991 patent, Jazz is proceeding with its infringing activity, and with the specific intent to cause (or willful blindness to causing) infringement of the '991 patent by others as set forth herein.

**ANSWER:**  Jazz denies the allegations of Paragraph 41.

42.     On information and belief, Jazz has no reasonable basis for believing that it would not be liable for infringing the '991 patent or believing that the '991 patent is invalid or otherwise unenforceable.

**ANSWER:**  Jazz denies the allegations of Paragraph 42.

43.     Jazz's infringement of the '991 patent is willful.

**ANSWER:**  Jazz denies the allegations of Paragraph 43.

44.     Avadel has suffered and will suffer monetary damages as a result of Jazz's infringement of the '991 patent.

**ANSWER:**  Jazz denies the allegations of Paragraph 44.

## <u>JURY TRIAL DEMAND</u>

45.     Avadel hereby demands a trial by jury on all issues triable as such.

**ANSWER:** Avadel's demand for a trial by jury requires no response by Jazz.

## AVADEL'S PRAYER FOR RELIEF

Jazz denies that Avadel is entitled to any relief on its Claims, either as prayed for in its pleading or otherwise.

## JAZZ'S AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any matter on which Avadel bears such burden, and without prejudice to the denials set forth in this Answer and to the ability to amend this Answer to seek and allege any and all defenses not presently known or that are revealed during the course of discovery or otherwise, Jazz asserts the following affirmative defenses in the alternative in combination with the facts pleaded in connection with Jazz's Counterclaims in response to Avadel's Complaint:

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Avadel's Complaint fails to state any claim for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Non-Infringement)

As a further separate and affirmative defense, Jazz has not infringed, does not directly or indirectly infringe (either by induced infringement or contributory infringement), and will not infringe any valid, enforceable, asserted claim of the '991 patent, either literally or under the doctrine of equivalents, or under any theory of infringement.

### THIRD AFFIRMATIVE DEFENSE
### (Invalidity)

As a further separate and affirmative defense, each of the asserted claims of the '991 patent is invalid for failure to comply with one or more conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, and/or 120.

## FOURTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

As a further separate and affirmative defense, Avadel's claims are barred based on statements, representations, and admissions made during prosecution of the patent applications resulting in the asserted patent or related patent applications, from asserting any interpretation of any valid, enforceable claim of the asserted patent that would be broad enough to cover any accused product alleged to infringe the asserted patent, either literally or by application of the doctrine of equivalents, or under any theory of infringement.

## FIFTH AFFIRMATIVE DEFENSE
### (35 U.S.C. § 271(e)(1))

As a further separate and affirmative defense, Avadel's claims are barred in whole or in part to the extent Avadel alleges actions undertaken by Jazz, which are solely for uses reasonably related to the development and submission of information to the FDA, infringe the '991 patent.

## SIXTH AFFIRMATIVE DEFENSE
### (35 U.S.C. § 273(a))

As a further separate and affirmative defense, as explained more fully in the facts supporting Jazz's counterclaims below, to the extent Jazz infringes the claims of the '991 patent, Jazz has, acting in good faith, commercially used the subject matter in the United States, either in connection with an internal commercial use or an actual arm's length sale or other arm's length commercial transfer of a useful end result of such commercial use and such commercial use occurred at least 1 year before the earlier of either the effective filing date of the purported claimed inventions or the date on which the purported inventions were disclosed to the public.

The purported subject matter of the claimed inventions of the '991 patent is subject to a premarketing regulatory review period during which the safety or efficacy of the subject matter is established. Jazz used the purported subject matter of the '991 patent's claimed inventions in a

premarketing regulatory review period during which the safety or efficacy of the subject matter was established. Such premarketing regulatory review period constitutes a commercial use under 35 U.S.C. § 273(a)(1). 35 U.S.C. § 273(c)(1). Such use occurred at least 1 year before the earlier of either the effective filing date of the purported claimed inventions or the date on which the purported inventions were disclosed to the public.

Because Jazz commercially used the purported subject matter of the '991 patent at least 1 year before the earlier of either the effective filing date of the purported claimed inventions or the date on which the purported inventions were disclosed to the public, Jazz cannot be found to infringe any valid and enforceable claim of the '991 patent.

## SEVENTH AFFIRMATIVE DEFENSE
### (35 U.S.C. § 286)

As a further separate and affirmative defense, Avadel's claim for damages, if any, for Jazz's alleged infringement of the '991 patent is time limited by 35 U.S.C. § 286.

## EIGHTH AFFIRMATIVE DEFENSE
### (35 U.S.C. § 287)

As a further separate and affirmative defense, Avadel is barred in whole or in part from recovering damages under 35 U.S.C. § 287 due to Avadel's failure to provide proper notice of any alleged infringement to Jazz before service of its Complaint.

## NINTH AFFIRMATIVE DEFENSE
### (35 U.S.C. § 288)

As a further separate and affirmative defense, Avadel's demand for costs is limited or barred under 35 U.S.C. § 288 because the claims of the '991 patent are invalid and/or otherwise unenforceable.

### TENTH AFFIRMATIVE DEFENSE
**(No Willful Infringement)**

As a further separate and affirmative defense, Avadel's Complaint fails to state a claim for

willful infringement and/or exceptional case and that Jazz has engaged in no such conduct.

### ELEVENTH AFFIRMATIVE DEFENSE
**(No Attorneys' Fees)**

As a further separate and affirmative defense, Avadel has failed to state facts sufficient to

support an award of attorneys' fees.

### TWELFTH AFFIRMATIVE DEFENSE
**(No Damages and/or Failure to Mitigate Damages)**

As a further separate and affirmative defense, Avadel has suffered no damages, and to the

extent Avadel has sustained damages, which Jazz expressly denies, Avadel has contributed in a

direct and proximate manner to their own alleged damages by failing to act reasonably and

prudently to mitigate its damages.  Avadel's damages, if any, must be reduced by the extent to

which those damages were proximately caused by Avadel's failure to mitigate its own damages.

### THIRTEENTH AFFIRMATIVE DEFENSE
**(Patent Misuse)**

As a further separate and affirmative defense, Avadel, by its conduct, has engaged in patent

misuse by asserting infringement claims it knows or should have known are meritless for at least

the reasons described below with respect to Jazz's Affirmative Defenses and Counterclaims.

### FOURTEENTH AFFIRMATIVE DEFENSE
**(Unclean Hands)**

As a further separate and affirmative defense, for at least its conduct described with respect

to Jazz's Affirmative Defenses and Counterclaims, Avadel's claims are barred, in whole or in part,

by the equitable doctrine of unclean hands.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Prosecution Laches)

As a further separate and affirmative defense, Avadel's infringement claims based on the '991 patent are barred by the doctrine of laches.

For example, the '991 patent was filed on June 28, 2024 and issued on December 17, 2024. The '991 patent issued from U.S. Patent Application No. 18/758,344 (the "'344 application"), filed on June 28, 2024 and is a continuation from U.S. Patent Application No. 18/758,344, which is a continuation of U.S. Patent Application No. 16/804,966 (the "'966 application"), filed on February 28, 2020, which issued as U.S. Patent No. 11,300,065 (the "'065 patent") on August 2, 2022.

Avadel unreasonably delayed pursuing the claims of the '991 patent for approximately four and a half years. Indeed, Avadel did not pursue claims directed at dosing "at least two hours after eating" until it filed the '344 application. Specifically, approximately four and a half years after the written description of the '991 patent was filed as the '344 application, Avadel amended its claims to introduce claims directed at dosing "at least two hours after eating." *See* '991 patent Prosecution History, June 28, 2024 Originally Filed Claims. The claims of the '991 patent issued with claims reciting dosing "at least two hours after eating" on December 17, 2024, the same day Avadel sued Jazz in C.A. No. 24-01384 asserting the '991 patent, which was dismissed, and approximately two weeks before the filing of this lawsuit.

The claims of the '991 patent are invalid including for a lack of written description and enablement. To the extent Avadel disagrees, Avadel cannot identify any reason why it could not have presented the claims earlier. The specification and figures of the '991 patent are the same as those filed in the '966 application that the '991 patent claims priority to, and Avadel pursued many other overlapping claims directed towards dosing in less than two hours after eating in the past 4.5 years before it pursued the "at least two hours after eating" claims.

As a result of Avadel's unexplained and unreasonable delay, and to the extent that Jazz infringes (which it denies), Jazz has been prejudiced.  For example, Jazz invested time and resources in the development of its accused XYWAV® drug product and methods of using XYWAV®. Avadel's silence and years of delay in untimely pursuing claims that it now contends cover this technology is highly prejudicial to Jazz.

### SIXTEENTH AFFIRMATIVE DEFENSE
**(Waiver, Acquiescence, Equitable Estoppel, Implied License, and/or Other Equitable Defenses)**

As a further separate and affirmative defense, Avadel's claims are barred due to Avadel's waiver, acquiescence, estoppel, unclean hands, implied license, and the actions and/or omissions of Avadel or others acting on behalf of Avadel, including the conduct described below in Jazz's counterclaims, that give rise to other equitable defenses.

### SEVENTEENTH AFFIRMATIVE DEFENSE
**(Other Defenses)**

Jazz reserves the right to supplement or amend this Answer and reserves all defenses set out in Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, which become applicable during discovery or otherwise during litigation.

### JAZZ'S COUNTERCLAIMS

Plaintiffs Avadel CNS Pharmaceuticals, LLC and Flamel Ireland Limited (together, "Plaintiffs" or "Avadel") allege that Defendants Jazz Pharmaceuticals, Inc. and Jazz Pharmaceuticals Ireland Limited (together, "Defendants" or "Jazz") purportedly induce infringement Avadel's U.S. Patent No. 12,167,991 (the "'991 patent"), which issued December 17, 2024, and was filed June 28, 2024, by marketing and selling its mixed salts oxybate product, XYWAV®, for the once-nightly treatment of Idiopathic Hypersomnia, for which it has been

approved since August 12, 2021, more than three years prior to the issuance of the '991 patent. XYWAV® itself has been approved for use since July 21, 2020, nearly 4 years prior to when Avadel filed the claims that eventually issued in the '991 patent. For its Counterclaims against Avadel, Jazz alleges as follows:

1.      Jazz incorporates by reference each of the foregoing paragraphs of Jazz's Answer and Affirmative Defenses to Avadel's Complaint.

2.      Jazz's Counterclaims arise under the Patent Laws of the United States, 35 U.S.C. §§ 100 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

3.      Counterclaim-Plaintiff, Jazz Pharmaceuticals, Inc., is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business at 3170 Porter Drive, Palo Alto, California 94304.

4.      Counterclaim-Plaintiff, Jazz Pharmaceuticals Ireland Limited, is a corporation organized and existing under the laws of Ireland, having a principal place of business at Waterloo Exchange, Waterloo Road, Dublin, Ireland 4.

5.      On information and belief, Counterclaim-Defendant Avadel CNS Pharmaceuticals, LLC is a limited liability company organized and existing under the laws of the State of Delaware and has a principal place of business at 16640 Chesterfield Grove Road, Suite 200, Chesterfield, Missouri 63005.

6.      This court has personal jurisdiction over Avadel CNS Pharmaceuticals, LLC due to its decision to register as a limited liability company organized and existing under the laws of the State of Delaware.

7.      This court has personal jurisdiction over Avadel CNS Pharmaceuticals, LLC because, among other reasons, Avadel subjected itself to the jurisdiction of this Court by filing its Complaint here.

8.      On information and belief, Avadel CNS Pharmaceuticals, LLC purposefully has conducted and continues to conduct business in this Judicial District.

9.      On information and belief, Avadel CNS Pharmaceuticals, LLC is in the business of, among other things, manufacturing, marketing, importing, offering for sale, and selling pharmaceutical products, including LUMRYZ®, throughout the United States, including in this Judicial District.

10.     This court has personal jurisdiction over Avadel CNS Pharmaceuticals, LLC based on its purposeful, systematic, and continuous contacts with the State of Delaware, including due to its sale and offer for sale of LUMRYZ® to customers within the state.

11.     On information and belief, Flamel Ireland Limited ("Flamel") is a limited company organized and existing under the laws of the Republic of Ireland and has its principal place of business at Ten Earlsfort Terrace, Dublin 2, D02 T380 Ireland.

12.     Flamel is a foreign entity not subject to general personal jurisdiction in the courts of any state.

13.     This court has personal jurisdiction over Flamel because, among other reasons, Flamel subjected itself to the jurisdiction of this Court by filing its Complaint here.

14.     On information and belief, Flamel purposefully has conducted and continues to conduct business in this Judicial District.

15.     On information and belief, Flamel is in the business of, among other things, manufacturing, marketing, importing, offering for sale, and selling pharmaceutical products, including LUMRYZ®, throughout the United States, including in this Judicial District.

16.     This court has personal jurisdiction over Flamel based on its purposeful, systematic, and continuous contacts with the State of Delaware, including due to its sale and offer for sale of LUMRYZ® to customers within the state.

17.     In the alternative, this Court has personal jurisdiction over Flamel because the requirements of Federal Rule of Civil Procedure 4(k)(2) are met as (a) Jazz's claims arise under federal law; (b) Flamel is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Flamel has sufficient contacts with the United States as a whole, including, but not limited to, manufacturing, importing, offering to sell, and selling pharmaceutical products that are distributed throughout the United States, such that this Court's exercise of jurisdiction over Flamel satisfies due process.

18.     Avadel has consented to personal jurisdiction in this Court in numerous recent actions, including this one. *See e.g.*, *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 24-1384-GBW, D.I. 1, (D. Del. Dec. 17, 2024); *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 25-21-GBW, D.I. 1, (D. Del. Jan. 7, 2025); *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms. Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 25-57-GBW, D.I. 1, (D. Del. Jan. 14, 2025); *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 25-196-GBW, D.I. 1, (D. Del. Feb. 18, 2025); *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms. Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 25-221-GBW, D.I. 1, (D. Del. Feb. 25, 2025); *Avadel CNS Pharms., LLC and Flamel*

*Ireland Ltd. v. Jazz Pharms. Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 25-405-GBW, D.I. 1, (D. Del. Apr. 1, 2025); *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, C.A. No. 21-691-GBW, D.I. 11, (D. Del. June 3, 2021); *Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd. v. Avadel CNS Pharms., LLC*, C.A. No. 21-1138-GBW, D.I. 12 (D. Del. Sep. 9, 2021); *Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd. v. Avadel CNS Pharms., LLC*, C.A. No. 21-1594-GBW, D.I. 24 (D. Del. Jan. 7, 2022); *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, C.A. No. 22-941-GBW, D.I. 14 (D. Del. Oct. 21, 2022); *Avadel CNS Pharms., LLC and Avadel Pharms. PLC v. Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 22-487-GBW, D.I. 2 (D. Del Apr. 14, 2022).

19.    Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b).

## Jazz's Development Of Xywav®

20.    In 2005 Jazz acquired Orphan Medical and its sodium oxybate product, Xyrem®. *See Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, C.A. No. 21-691-GBW, D.I. 592 at ¶ 11 (D. Del. Apr. 22, 2024).  Since 2005, Xyrem® has been approved for the treatment of cataplexy and excessive daytime sleepiness in adult patients with narcolepsy.

21.    Jazz began development on a lower sodium-containing oxybate product in 2009. *See id.* at ¶ 13.

22.    Jazz pursued a lower-sodium oxybate product in response to the need for an oxybate treatment with lower sodium content because of Xyrem®'s high sodium content and the known risks of high-sodium intake, including cardiovascular-related diseases, as well as narcoleptics' inherently increased risk of cardiovascular-related comorbidities/morbidities.  Ex. A, Junnarkar et al. *Development of a lower-sodium oxybate formulation for the treatment of patients with narcolepsy and idiopathic hypersomnia*, Expert Opin. Drug Discov. 17(2):109-119 (2021) at 111.  Jazz intended to solve the high-sodium issue using other cations.  *Id.*

23.     Jazz began developing various low-sodium formulation candidates that included mixtures of calcium, magnesium, potassium, and sodium oxybates, as well as single-cation, no-sodium formulations.  *Id.*

24.     Jazz's inventors Clark P. Allphin and Michael DesJardin filed the first mixed-salts oxybate patent application in 2012, which was granted in 2013.  *See* Ex. A at 111; *see also* Ex. B, U.S. Patent No. 8,591,922.

25.     Jazz conducted various preclinical studies on its low- and no-sodium formulation candidates.  Ex. A at 111-112.  After the preclinical studies completed, Jazz moved forward with the formulation that would ultimately be approved as Xywav® to *in vivo* testing in 2013 because of its 92% reduction in sodium.  *Id.* at 112-13.  Jazz referred to this formulation with various codenames throughout development such as OMSOS, SOI-2, and JZP-258.[10]

26.     Certain *in vivo* studies conducted on the formulation that would ultimately be approved as Xywav® as well as other low- and no-sodium formulations (study numbers 13-010 and JZP258-101) are detailed in U.S. Patent No. 11,426,373 (the "'373 patent) (Exhibit C) issued on August 30, 2022.  The '373 patent was filed on December 22, 2020 as U.S. Application 17/131,418, which is a continuation of U.S. Application No. 16/575,213, filed on September 18, 2019 (published on April 16, 2020 as Publication No. US 2020/0113853 (the "'853 publication")), which is a continuation of U.S. Application 15/709,262 (the "'262 application"), filed September 19, 2017 (published on September 20, 2018 as Publication No. US 2018/0263936 (the "'936 publication")), which claims priority to U.S. Provisional Application No. 62/473,232 (the "'232 provisional"), filed March 17, 2017.  The '373 patent is related to and shares a specification with the '936 publication.

_____

[10]   Jazz will herein refer to the pre-approval Xywav® formulation as "JZP-258."

27.     Jazz submitted a proposed clinical testing program including a proposed study protocol to the FDA on October 30, 2013.  The proposed study was a Phase 1 study to evaluate the pharmacokinetics and food effect of JZP-258 compared with XYREM®.

28.     Beginning in 2014, Jazz ran the Phase 1 study to evaluate the pharmacokinetics and food effect of JZP-258 compared to XYREM® with hopes that the two would be bioequivalent to obviate the need for a Phase III clinical trial.  *See* Ex. A at 113; *see also* Ex. D, Chen C, Skowronski R, Jenkins J, Zomorodi K., *Pharmacokinetics, relative bioavailability, and food effect of JZP-258 and sodium oxybate: results of two phase 1, open-label, randomised crossover studies in healthy volunteers*. Biennial World Sleep Congress; 20-25 Sep 2019, Vancouver; Ex. C at 4:55-62, 6:39-51, 6:61-65, 35:1-36:36 (Example 2).  Jazz identified this study with number 13-010.  Ex. D; Ex. C at 35:1-36:36 (Example 2).  Jazz intended JZP-258 to eventually be a low-sodium alternative to XYREM® for the treatment of cataplexy and excessive daytime sleepiness in adult patients with narcolepsy, among other potential indications.

29.     In 13-010, participants were randomized to receive single doses of 4.5 g of JZP-258 under fasted conditions, 4.5 g of JZP-258 under fed conditions, 4.5 g of XYREM® under fasted conditions, and 4.5 g of XYREM® under fed conditions.  Ex. D.  Investigators studied various pharmacokinetic ("PK") parameters such as maximum plasma concentration of oxybate ("$C_{max}$"), time to maximum plasma concentration ("$T_{max}$"), and total oxybate exposure measured by average area under the plasma concentration-time curve ("AUC").  *Id.*

30.     The results showed that in the fasted state, XYREM® and JZP-258 showed similar AUC, but $C_{max}$ was lower for JZP-258 than XYREM®.  Ex. D; Ex. C at 35:1-36:36 (Example 2), Figure 1.  Because $C_{max}$ was lower for JZP-258 than XYREM® in the fasted state, it did not meet the FDA-defined bioequivalence criteria.  Ex. D; Ex. C at 35:1-36:36 (Example 2), Figure 1.

Further, $T_{max}$ was slightly delayed for JZP-258 compared with XYREM®. Ex. D; Ex. C at 35:1-36:36 (Example 2), Figure 1. Under the fed condition, JZP-258 was bioequivalent to XYREM® with regards to oxybate $C_{max}$ and AUC after single dose oral administration. Ex. D; Ex. C at 35:1-36:36 (Example 2), Figure 1.

31.    The investigators also noticed a potentially less prominent food effect for JZP-258 compared with XYREM®. Ex. D ("The effects of food on $C_{max}$ were less with JZP-258 than with SXB"); Ex. C at 38:10-20 ("The results indicate that formulation 'O' has a reduced food effect compared to Xyrem® and that, in both cases, the higher dilution volume has a smaller food effect.").

32.    With hopes that dilution volume of water was affecting the bioequivalence results in the 13-010 study, Jazz ran a second PK study, JZP258-101. Ex. D; Ex. C at 37:35-39:3 (Example 2.4). The objectives of JZP258-101 were to determine whether water dilution volume had an effect on bioequivalence and to further study the food effect of JZP-258. Ex. D, Ex. C at 37:35-39:3 (Example 2.4). To study these variables, either JZP-258 or XYREM® was administered to each study participant in single, 4.5 g doses, diluted in 60 or 240 mL water. Ex. D, Ex. C at 37:35-39:3 (Example 2.4).

33.    The results of JZP258-101 largely confirmed the results of 13-010. In the fasted state, JZP-258 met FDA bioequivalence criteria for AUC but not for $C_{max}$. Ex. D; Ex. C at 37:35-39:3 (Example 2.4), Figures 4 and 5. JZP-258 had a lower $C_{max}$ than XYREM® with a longer median $T_{max}$ than XYREM®. Ex. D; Ex. C at 37:35-39:3 (Example 2.4), Figures 4 and 5. And again, the food effect for JZP-258 was smaller than for XYREM®. Ex. D; Ex. C at 37:35-39:3 (Example 2.4), Figures 4 and 5. No effect of water volume was observed. Ex. D ("Volume of Water Diluent Did

Not Affect PK of JZP-258 or SXB in Study JZP258-101"); Ex. C at 38:58-59 ("Volume of administration and its interaction were both dropped as insignificant terms.").

34.    Jazz decided to move forward with JZP-258 despite the lack of bioequivalence because the 92% lower sodium was a more promising advancement in the field. Ex. A at 112-115. Jazz worked diligently over the years and decided to conduct the Phase III trial in narcolepsy and subsequently an additional Phase III trial in idiopathic hypersomnia to obtain the approvals for Xywav®.

35.    As noted above, the findings related to the decreased food effect of JZP-258 in 13-010 and JZP258-101 are disclosed in the '373 patent and its related applications and publications. *See generally* Ex. C.

36.    After over 10 years of development, in July 2020, Xywav® was approved for the treatment of cataplexy and excessive daytime sleepiness in narcolepsy. Ex. A at 115. Jazz launched Xywav® in November 2020.[11] The FDA also awarded Xywav® orphan drug exclusivity as being clinically superior to the sodium oxybate treatment on the market, Xyrem®, due to its greatly reduced chronic sodium burden. Ex. A at 115. Xywav® also became (and remains) the first and only FDA-approved drug for the treatment of IH. Ex. A at 115. While Xywav®, like Xyrem®, is approved to be dosed twice nightly with respect to treating narcolepsy symptoms, Xywav® is approved to be dosed once or twice nightly with respect to treating IH. Ex. E, Xywav® Package Insert at 1, 5. Since its first full year of sales in 2021, Xywav® sales have increased

---

[11]    Jazz Pharmaceuticals Form 10-K for 2024 at 11 (available at https://investor.jazzpharma.com/static-files/057f9402-cc59-44b0-a762-51c9f63ed0a8) (last visited May, 20, 2025).

rapidly: $535 million in 2021,[12] $958 million in 2022, $1.273 billion in 2023, and $1.473 billion in 2024.[13]

### Count I:  Declaratory Judgment of Non-Infringement of the '991 Patent

37.    Jazz incorporates by reference the allegations made in Jazz's Answer, Defenses, and in the preceding Paragraphs of its Counterclaims as if set forth fully herein.

38.    An actual, substantial, and continuing justiciable case or controversy exists between Jazz and Avadel over the alleged infringement of at least one claim of the '991 patent.  Avadel purports to be the owner of the '991 patent.  Avadel has alleged that Jazz's marketing and selling of XYWAV® in the United States induces infringement of at least claim 1 of the '991 patent in violation of 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

39.    The marketing and selling of XYWAV® in the United States has not induced infringement, does not induce infringement, and would not induce infringement of any valid and enforceable claim of the '991 patent in violation of 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

40.    The use of XYWAV® in the United States does not result in direct infringement of any valid and enforceable claim of the '991 patent, either literally or under the doctrine of equivalents.

---

[12]    Jazz Pharmaceuticals Form 10-K for 2023 at 83 (available at https://investor.jazzpharma.com/static-files/b942757a-016c-4014-931d-ae2e51206725) (last visited May, 20, 2025).

[13]    Jazz Pharmaceuticals Form 10-K for 2024 at 87 (available at https://investor.jazzpharma.com/static-files/057f9402-cc59-44b0-a762-51c9f63ed0a8) (last visited May, 20, 2025).

41.     Jazz seeks, and is entitled to, a declaration that Jazz has not infringed, is not infringing, and will not infringe any valid claim of the '991 patent, directly, indirectly, by inducement, contributorily, literally, under the doctrine of equivalents, or in any other manner.

42.     A judicial declaration is necessary and appropriate so that Jazz may ascertain its rights regarding the '991 patent.

### Count II:  Declaratory Judgment of Invalidity of the '991 Patent

43.     Jazz incorporates by reference the allegations made in Jazz's Answer, Defenses, and in the preceding Paragraphs of its Counterclaims as if set forth fully herein.

44.     An actual, substantial, and continuing justiciable case or controversy exists between Jazz and Avadel over the validity of the claims of the '991 patent.

45.     The claims of the '991 patent are invalid for failure to comply with and/or satisfy one or more of the conditions and requirements of patentability specified in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 115, 116 and/or 120, and/or based on other judicially-created bases for invalidation.

46.     The alleged invention of the '991 patent was known or used by others in this country or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for the patent.

47.     The alleged invention of the '991 patent was patented or described in a printed publication in this or a foreign country more than one year prior to the date of the application for patent in the United States.

48.     The alleged invention of the '991 patent does no more than combine familiar elements according to known methods to yield predictable results.  Any alleged improvement over the prior art set forth in the '991 patent is no more than the predictable use of prior art elements according to their established functions.  A person of skill in the art would have been motivated to

combine the teachings of the prior art to achieve the alleged invention of the '991 patent and would have had a reasonable expectation of success in doing so.

49.    The subject matter claimed in the '991 patent fails to comply with 35 U.S.C. §§ 102 and/or 103 in that the differences between the subject matter claimed in the patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

50.    The '991 patent does not contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as required by the statutes of the United States to enable any person skilled in the art to practice the invention purported to be covered thereby.

51.    The claims of the '991 patent are invalid and void because they do not inform those skilled in the art about the scope of the invention with reasonable certainty and they do not particularly point out and distinctly claim the subject matter of the alleged invention, as required by 35 U.S.C. § 112.

52.    Jazz is entitled to and seeks a declaration that the claims of the '991 patent are invalid.

**Count III:  Declaratory Judgment of No Willful Infringement of the '991 Patent**

53.    Jazz incorporates by reference the allegations made in Jazz's Answer, Defenses, and in the preceding Paragraphs of its Counterclaims as if set forth fully herein.

54.    Avadel has failed to allege Jazz engaged in any willful infringement or reprehensible conduct and Jazz has engaged in no such conduct, which is a prerequisite for a finding of willfulness and an award of enhanced damages.

55.    Jazz asks this court to issue a declaratory judgment stating that Jazz's actions do not constitute infringement, let alone willful infringement.

## PRAYER FOR RELIEF

WHEREFORE, Jazz requests the following relief:

A.    That the Court enter judgment against Avadel and in favor of Jazz on the claims set forth in Avadel's Complaint and that each claim be dismissed with prejudice;

B.    That the Court enter judgment that Jazz does not infringe and/or will not infringe any valid and enforceable claim of the asserted patent in violation of 35 U.S.C. § 271(b) either literally or under the doctrine of equivalents, or any other theory of infringement;

C.    That the Court enter judgment that the asserted patent is invalid;

D.    That the Court determine that pursuant to 35 U.S.C. § 285, Avadel's conduct in commencing and pursuing this action renders this an exceptional case and award Jazz its reasonable attorneys' fees and its costs and disbursements in this action;

E.    That the Court grant Jazz such other and further relief, in law or equity, as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

OF COUNSEL:

F. Dominic Cerrito
Evangeline Shih
Gabriel P. Brier
Frank C. Calvosa
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

May 21, 2025

Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*
*Jazz Pharmaceuticals, Inc. and*
*Jazz Pharmaceuticals Ireland Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 21, 2025, upon the following in the manner indicated:

Daniel M. Silver, Esquire                                                *VIA ELECTRONIC MAIL*
Alexandra M. Joyce, Esquire
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Kenneth G. Schuler, Esquire                                            *VIA ELECTRONIC MAIL*
Marc N. Zubick, Esquire
Alex Grabowski, Esquire
Manuela Burek, Esquire
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
*Attorneys for Plaintiffs*

Herman H. Yue, Esquire                                                  *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY  10020
*Attorneys for Plaintiffs*

Kelly A. Welsh, Esquire                                                  *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
*Attorneys for Plaintiffs*

Daralyn J. Durie, Esquire                                               *VIA ELECTRONIC MAIL*
Adam R. Brausa, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Plaintiffs*

Kira A. Davis, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Plaintiffs*


                                        */s/ Jeremy A. Tigan*
                                        _____
                                        Jeremy A. Tigan (#5239)