**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVADEL CNS PHARMACEUTICALS, LLC and FLAMEL IRELAND LIMITED,<br><br>    Plaintiffs and<br>    Counterclaim-Defendants,<br><br>         v.<br><br>JAZZ PHARMACEUTICALS, INC. and JAZZ PHARMACEUTICALS IRELAND LIMITED,<br><br>    Defendants and<br>    Counterclaim-Plaintiffs. | C.A. No. 25-09-GBW<br><br>**JURY TRIAL DEMANDED** |

**AVADEL'S ANSWER TO COUNTERCLAIMS**

Plaintiffs and Counterclaim-Defendants Avadel CNS Pharmaceuticals, LLC and Flamel Ireland Limited (collectively "Avadel") in response to the Counterclaims of Defendants Jazz Pharmaceuticals, Inc. and Jazz Pharmaceuticals Ireland Limited (collectively "Defendants" or "Jazz") states as follows:

**ANSWER TO COUNTERCLAIMS**

1. Jazz incorporates by reference each of the foregoing paragraphs of Jazz's Answer and Affirmative Defenses to Avadel's Complaint.

**ANSWER**: Avadel incorporates by reference each of the paragraphs of its Complaint as if fully set forth herein.

2. Jazz's Counterclaims arise under the Patent Laws of the United States, 35 U.S.C. §§ 100 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

**ANSWER**: The allegations in paragraph 2 state legal conclusions to which no response is required. To the extent a response is required, Avadel admits that Jazz's Complaint purports

to allege actions arising under the Patent Laws of the United States and the Declaratory Judgment Act.

3. Counterclaim-Plaintiff, Jazz Pharmaceuticals, Inc., is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business at 3170 Porter Drive, Palo Alto, California 94304.

**ANSWER**: On information and belief, Avadel admits the allegations of paragraph 3.

4. Counterclaim-Plaintiff, Jazz Pharmaceuticals Ireland Limited, is a corporation organized and existing under the laws of Ireland, having a principal place of business at Waterloo Exchange, Waterloo Road, Dublin, Ireland 4.

**ANSWER**: On information and belief, Avadel admits the allegations of paragraph 4.

5. On information and belief, Counterclaim-Defendant Avadel CNS Pharmaceuticals, LLC is a limited liability company organized and existing under the laws of the State of Delaware and has a principal place of business at 16640 Chesterfield Grove Road, Suite 200, Chesterfield, Missouri 63005.

**ANSWER**: Admitted.

6. This court has personal jurisdiction over Avadel CNS Pharmaceuticals, LLC due to its decision to register as a limited liability company organized and existing under the laws of the State of Delaware.

**ANSWER**: The allegations in paragraph 6 state legal conclusions to which no response is required. To the extent a response is required, Avadel does not dispute that Avadel CNS Pharmaceuticals, LLC is subject to personal jurisdiction in Delaware for purposes of this action only.

7. This court has personal jurisdiction over Avadel CNS Pharmaceuticals, LLC because, among other reasons, Avadel subjected itself to the jurisdiction of this Court by filing its Complaint here.

**ANSWER**: The allegations in paragraph 7 state legal conclusions to which no response is required. To the extent a response is required, Avadel does not dispute that Avadel CNS

Pharmaceuticals, LLC is subject to personal jurisdiction in Delaware for purposes of this action only.

8. On information and belief, Avadel CNS Pharmaceuticals, LLC purposefully has conducted and continues to conduct business in this Judicial District.

**ANSWER**: Admitted.

9. On information and belief, Avadel CNS Pharmaceuticals, LLC is in the business of, among other things, manufacturing, marketing, importing, offering for sale, and selling pharmaceutical products, including LUMRYZ®, throughout the United States, including in this Judicial District.

**ANSWER**: Avadel admits that Avadel CNS Pharmaceuticals, LLC markets, imports, offers for sale, and sells in LUMRYZ® in the United States and this Judicial District. Except as otherwise admitted, the allegations are denied as stated.

10. This court has personal jurisdiction over Avadel CNS Pharmaceuticals, LLC based on its purposeful, systematic, and continuous contacts with the State of Delaware, including due to its sale and offer for sale of LUMRYZ® to customers within the state.

**ANSWER**: The allegations in paragraph 10 state legal conclusions to which no response is required. To the extent a response is required, Avadel does not dispute that Avadel CNS Pharmaceuticals, LLC is subject to personal jurisdiction in Delaware for purposes of this action only.

11. On information and belief, Flamel Ireland Limited ("Flamel") is a limited company organized and existing under the laws of the Republic of Ireland and has its principal place of business at Ten Earlsfort Terrace, Dublin 2, D02 T380 Ireland.

**ANSWER**: Avadel admits that Flamel is a limited company organized and existing under the laws of the Republic of Ireland and maintains a registered agent for service of process at Ten Earlsfort Terrace, Dublin 2, D02 T380 Ireland. Except as otherwise admitted, the allegations are denied as stated.

12. Flamel is a foreign entity not subject to general personal jurisdiction in the courts of any state.

**ANSWER**: The allegations in paragraph 12 state legal conclusions to which no response is required. To the extent a response is required, Avadel does not dispute that Flamel is subject to personal jurisdiction in Delaware for purposes of this action only.

13. This court has personal jurisdiction over Flamel because, among other reasons, Flamel subjected itself to the jurisdiction of this Court by filing its Complaint here.

**ANSWER**: The allegations in paragraph 13 state legal conclusions to which no response is required. To the extent a response is required, Avadel does not dispute that Flamel is subject to personal jurisdiction in Delaware for purposes of this action only.

14. On information and belief, Flamel purposefully has conducted and continues to conduct business in this Judicial District.

**ANSWER**: Denied.

15. On information and belief, Flamel is in the business of, among other things, manufacturing, marketing, importing, offering for sale, and selling pharmaceutical products, including LUMRYZ®, throughout the United States, including in this Judicial District.

**ANSWER**: Avadel admits that Flamel manufactures LUMRYZ® in the United States. Except as otherwise admitted, the allegations are denied as stated.

16. This court has personal jurisdiction over Flamel based on its purposeful, systematic, and continuous contacts with the State of Delaware, including due to its sale and offer for sale of LUMRYZ® to customers within the state.

**ANSWER**: The allegations in paragraph 16 state legal conclusions to which no response is required. To the extent a response is required, Avadel does not dispute that Flamel is subject to personal jurisdiction in Delaware for purposes of this action only.

17. In the alternative, this Court has personal jurisdiction over Flamel because the requirements of Federal Rule of Civil Procedure 4(k)(2) are met as (a) Jazz's claims arise under federal law; (b) Flamel is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Flamel has sufficient contacts with the United States as a whole, including, but not limited to, manufacturing, importing, offering to sell, and selling pharmaceutical products that are distributed throughout the United States, such that this Court's exercise of jurisdiction over Flamel satisfies due process.

**ANSWER**: The allegations in paragraph 17 state legal conclusions to which no response is required. To the extent a response is required, Avadel does not dispute that Flamel is subject to personal jurisdiction in Delaware for purposes of this action only.

18. Avadel has consented to personal jurisdiction in this Court in numerous recent actions, including this one. *See e.g.*, *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 24-1384-GBW, D.I. 1, (D. Del. Dec. 17, 2024); *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 25-21-GBW, D.I. 1, (D. Del. Jan. 7, 2025); *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms. Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 25-57-GBW, D.I. 1, (D. Del. Jan. 14, 2025); *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 25-196-GBW, D.I. 1, (D. Del. Feb. 18, 2025); *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms. Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 25-221-GBW, D.I. 1, (D. Del. Feb. 25, 2025); *Avadel CNS Pharms., LLC and Flamel Ireland Ltd. v. Jazz Pharms. Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 25-405-GBW, D.I. 1, (D. Del. Apr. 1, 2025); *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, C.A. No. 21-691-GBW, D.I. 11, (D. Del. June 3, 2021); *Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd. v. Avadel CNS Pharms., LLC*, C.A. No. 21-1138-GBW, D.I. 12 (D. Del. Sep. 9, 2021); *Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd. v. Avadel CNS Pharms., LLC*, C.A. No. 21-1594-GBW, D.I. 24 (D. Del. Jan. 7, 2022); *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, C.A. No. 22-941-GBW, D.I. 14 (D. Del. Oct. 21, 2022); *Avadel CNS Pharms., LLC and Avadel Pharms. PLC v. Jazz Pharms., Inc. and Jazz Pharms. Ireland Ltd.*, C.A. No. 22-487-GBW, D.I. 2 (D. Del Apr. 14, 2022).

**ANSWER**: The allegations in paragraph 18 state legal conclusions to which no response is required. To the extent a response is required, Avadel does not dispute that Avadel is subject to personal jurisdiction in Delaware for purposes of this action only.

19. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b).

**ANSWER**: The allegations in paragraph 19 state legal conclusions to which no response

is required. To the extent a response is required, Avadel does not challenge venue for purposes of this action only.

### Jazz's Development of XYWAV®

20. In 2005 Jazz acquired Orphan Medical and its sodium oxybate product, XYREM®. *See Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, C.A. No. 21-691-GBW, D.I. 592 at ¶ 11 (D. Del. Apr. 22, 2024). Since 2005, XYREM® has been approved for the treatment of cataplexy and excessive daytime sleepiness in adult patients with narcolepsy.

**ANSWER**: Avadel admits that the FDA approved labeling for XYREM® states that it is indicated for the treatment of cataplexy or excessive daytime sleepiness, and that the FDA approved labeling for XYREM® states that it contains sodium oxybate. On information and belief, Avadel admits that Jazz acquired Orphan Medical in 2005, along with its XYREM® product. Except as so admitted, Avadel lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

21. Jazz began development on a lower sodium-containing oxybate product in 2009. *See id.* at ¶ 13.

**ANSWER**: Avadel lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

22. Jazz pursued a lower-sodium oxybate product in response to the need for an oxybate treatment with lower sodium content because of XYREM®'s high sodium content and the known risks of high-sodium intake, including cardiovascular-related diseases, as well as narcoleptics' inherently increased risk of cardiovascular-related comorbidities/morbidities. Ex. A, Junnarkar et al. *Development of a lower-sodium oxybate formulation for the treatment of patients with narcolepsy and idiopathic hypersomnia*, EXPERT OPIN. DRUG DISCOV. 17(2):109-119 (2021) at 111. Jazz intended to solve the high-sodium issue using other cations. *Id.*

**ANSWER**: Denied.

23. Jazz began developing various low-sodium formulation candidates that included mixtures of calcium, magnesium, potassium, and sodium oxybates, as well as single-cation, no-sodium formulations. *Id.*

**ANSWER**: Avadel lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

24.   Jazz's inventors Clark P. Allphin and Michael DesJardin filed the first mixed salts oxybate patent application in 2012, which was granted in 2013. *See* Ex. A at 111; *see also* Ex. B, U.S. Patent No. 8,591,922.

**ANSWER**: Avadel admits that the face U.S. Patent No. 8,591,922 lists Clark P. Allphin and Michael DesJardin as its purported inventors and the face U.S. Patent No. 8,591,922 states that the application leading to it was filed in 2012 and that U.S. Patent No. 8,591,922 issued in 2013. Except as so admitted, Avadel lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

25.   Jazz conducted various preclinical studies on its low- and no-sodium formulation candidates. Ex. A at 111-112. After the preclinical studies completed, Jazz moved forward with the formulation that would ultimately be approved as XYWAV® to *in vivo* testing in 2013 because of its 92% reduction in sodium. *Id.* at 112-13. Jazz referred to this formulation with various codenames throughout development such as OMSOS, SOI-2, and JZP-258.

**ANSWER**: Avadel lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

26.   Certain *in vivo* studies conducted on the formulation that would ultimately be approved as XYWAV® as well as other low- and no-sodium formulations (study numbers 13-010 and JZP258-101) are detailed in U.S. Patent No. 11,426,373 (the "'373 patent) (Exhibit C) issued on August 30, 2022. The '373 patent was filed on December 22, 2020 as U.S. Application 17/131,418, which is a continuation of U.S. Application No. 16/575,213, filed on September 18, 2019 (published on April 16, 2020 as Publication No. US 2020/0113853 (the "'853 publication")), which is a continuation of U.S. Application 15/709,262 (the "'262 application"), filed September 19, 2017 (published on September 20, 2018 as Publication No. US 2018/0263936 (the "'936 publication")), which claims priority to U.S. Provisional Application No. 62/473,232 (the "'232 provisional"), filed March 17, 2017. The '373 patent is related to and shares a specification with the '936 publication.

**ANSWER**: Avadel refers to the document cited as Jazz's Exhibit C for its content and denies any allegations inconsistent with that content. Avadel lacks sufficient information to form

7

a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

27. Jazz submitted a proposed clinical testing program including a proposed study protocol to the FDA on October 30, 2013. The proposed study was a Phase 1 study to evaluate the pharmacokinetics and food effect of JZP-258 compared with XYREM®.

**ANSWER**: Avadel lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

28. Beginning in 2014, Jazz ran the Phase 1 study to evaluate the pharmacokinetics and food effect of JZP-258 compared to XYREM® with hopes that the two would be bioequivalent to obviate the need for a Phase III clinical trial. *See* Ex. A at 113; *see also* Ex. D, Chen C, Skowronski R, Jenkins J, Zomorodi K., *Pharmacokinetics, relative bioavailability, and food effect of JZP-258 and sodium oxybate: results of two phase 1, open-label, randomised crossover studies in healthy volunteers*. Biennial World Sleep Congress; 20-25 Sep 2019, Vancouver; Ex. C. at 4:55-62, 6:39- 51, 6:61-65, 35:1-36:36 (Example 2). Jazz identified this study with number 13-010. Ex. D; Ex. C at 35:1-36:36 (Example 2). Jazz intended JZP-258 to eventually be a low-sodium alternative to XYREM® for the treatment of cataplexy and excessive daytime sleepiness in adult patients with narcolepsy, among other potential indications.

**ANSWER**: Avadel refers to the document cited as Jazz's Exhibit D for its content and denies any allegations inconsistent with that content. Avadel lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

29. In 13-010, participants were randomized to receive single doses of 4.5 g of JZP-258 under fasted conditions, 4.5 g of JZP-258 under fed conditions, 4.5 g of XYREM® under fasted conditions, and 4.5 g of XYREM® under fed conditions. Ex. D. Investigators studied various pharmacokinetic ("PK") parameters such as maximum plasma concentration of oxybate ("$C_{max}$"), time to maximum plasma concentration ("$T_{max}$"), and total oxybate exposure measured by average area under the plasma concentration-time curve ("AUC"). *Id.*

**ANSWER**: Avadel refers to the document cited as Jazz's Exhibit D for its content and denies any allegations inconsistent with that content. Avadel lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

30. The results showed that in the fasted state, XYREM® and JZP-258 showed similar AUC, but $C_{max}$ was lower for JZP-258 than XYREM®. Ex. D; Ex. C at 35:1-36:36 (Example 2), Figure 1. Because $C_{max}$ was lower for JZP-258 than XYREM® in the fasted state, it did not meet

the FDA-defined bioequivalence criteria.  Ex. D; Ex. C at 35:1-36:36 (Example 2), Figure 1. Further, $T_{max}$ was slightly delayed for JZP-258 compared with XYREM®.  Ex. D; Ex. C at 35:1-36:36 (Example 2), Figure 1.  Under the fed condition, JZP-258 was bioequivalent to XYREM® with regards to oxybate $C_{max}$ and AUC after single dose oral administration.  Ex. D; Ex. C at 35:1-36:36 (Example 2), Figure 1.

**ANSWER**: Avadel refers to the documents cited as Jazz's Exhibits C and D for their contents and denies any allegations inconsistent with those contents.  Avadel lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

31. The investigators also noticed a potentially less prominent food effect for JZP-258 compared with XYREM®.  Ex. D ("The effects of food on $C_{max}$ were less with JZP-258 than with SXB"); Ex. C at 38:10-20 ("The results indicate that formulation 'O' has a reduced food effect compared to Xyrem® and that, in both cases, the higher dilution volume has a smaller food effect.").

**ANSWER**: Avadel refers to the documents cited as Jazz's Exhibits C and D for their contents and denies any allegations inconsistent with those contents.  Avadel lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

32. With hopes that dilution volume of water was affecting the bioequivalence results in the 13-010 study, Jazz ran a second PK study, JZP258-101. Ex. D; Ex. C at 37:35-39:3 (Example 2.4).  The objectives of JZP258-101 were to determine whether water dilution volume had an effect on bioequivalence and to further study the food effect of JZP-258. Ex. D, Ex. C at 37:35-39:3 (Example 2.4).  To study these variables, either JZP-258 or XYREM® was administered to each study participant in single, 4.5 g doses, diluted in 60 or 240 mL water. Ex. D, Ex. C at 37:35-39:3 (Example 2.4).

**ANSWER**: Avadel refers to the documents cited as Jazz's Exhibits C and D for their contents and denies any allegations inconsistent with those contents.  Avadel lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

9

33. The results of JZP258-101 largely confirmed the results of 13-010. In the fasted state, JZP-258 met FDA bioequivalence criteria for AUC but not for $C_{max}$. Ex. D; Ex. C at 37:35-39:3 (Example 2.4), Figures 4 and 5. JZP-258 had a lower $C_{max}$ than XYREM® with a longer median $T_{max}$ than XYREM®. Ex. D; Ex. C at 37:35-39:3 (Example 2.4), Figures 4 and 5. And again, the food effect for JZP-258 was smaller than for XYREM®. Ex. D; Ex. C at 37:35-39:3 (Example 2.4), Figures 4 and 5. No effect of water volume was observed. Ex. D ("Volume of Water Diluent Did Not Affect PK of JZP-258 or SXB in Study JZP258-101"); Ex. C at 38:58-59 ("Volume of administration and its interaction were both dropped as insignificant terms.").

**ANSWER**: Avadel refers to the documents cited as Jazz's Exhibits C and D for their contents and denies any allegations inconsistent with those contents. Avadel lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

34. Jazz decided to move forward with JZP-258 despite the lack of bioequivalence because the 92% lower sodium was a more promising advancement in the field. Ex. A at 112-115. Jazz worked diligently over the years and decided to conduct the Phase III trial in narcolepsy and subsequently an additional Phase III trial in idiopathic hypersomnia to obtain the approvals for XYWAV®.

**ANSWER**: Avadel lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

35. As noted above, the findings related to the decreased food effect of JZP-258 in 13-010 and JZP258-101 are disclosed in the '373 patent and its related applications and publications. *See generally* Ex. C.

**ANSWER**: Avadel refers to the document cited as Jazz's Exhibit C for its content and denies any allegations inconsistent with that content. Avadel lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

36. After over 10 years of development, in July 2020, XYWAV® was approved for the treatment of cataplexy and excessive daytime sleepiness in narcolepsy. Ex. A at 115. Jazz launched XYWAV® in November 2020. The FDA also awarded XYWAV® orphan drug exclusivity as being clinically superior to the sodium oxybate treatment on the market, XYREM®, due to its greatly reduced chronic sodium burden. Ex. A at 115. XYWAV® also became (and remains) the first and only FDA-approved drug for the treatment of IH. Ex. A at 115. While XYWAV®, like XYREM®, is approved to be dosed twice nightly with respect to treating narcolepsy symptoms,

10

XYWAV® is approved to be dosed once or twice nightly with respect to treating IH. Ex. E, XYWAV® Package Insert at 1, 5. Since its first full year of sales in 2021, XYWAV® sales have increased rapidly: $535 million in 2021, $958 million in 2022, $1.273 billion in 2023, and $1.473 billion in 2024.

**ANSWER**: On information and belief, Avadel admits XYWAV® was approved for the treatment of cataplexy and excessive sleepiness in patients with narcolepsy in June 2020. On information and belief, Avadel admits that XYWAV® was approved for the treatment of idiopathic hypersomnia in adults in August 2021. On information and belief, Avadel admits that FDA awarded XYWAV® orphan drug exclusivity for the treatment of cataplexy or excessive daytime sleepiness in patients 7 years of age and older with narcolepsy in June 2021. On information and belief, Avadel admits that FDA awarded XYWAV® orphan drug exclusivity for the treatment of idiopathic hypersomnia in adults in January 2022. On information and belief, Avadel admits that XYWAV® is approved for once or twice nightly dosing for the treatment of idiopathic hypersomnia. Avadel lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

### Count I: Declaratory Judgment of Non-Infringement of the '991 Patent

37. Jazz incorporates by reference the allegations made in Jazz's Answer, Defenses, and in the preceding Paragraphs of its Counterclaims as if set forth fully herein.

**ANSWER**: Avadel incorporates its responses to the allegations of the preceding paragraphs as if fully set forth herein.

38. An actual, substantial, and continuing justiciable case or controversy exists between Jazz and Avadel over the alleged infringement of at least one claim of the '991 patent. Avadel purports to be the owner of the '991 patent. Avadel has alleged that Jazz's marketing and selling of XYWAV® in the United States induces infringement of at least claim 1 of the '991 patent in violation of 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Avadel admits that there is an actual case or controversy between Jazz and Avadel but denies that Jazz's allegations are valid or sustainable. Avadel admits that Flamel is

11

the owner and assignee of U.S. Patent No. 12,167,991 (the "'991 patent"), that Avadel CNS Pharmaceuticals, LLC is the exclusive licensee of the '991 patent, and that Avadel collectively holds all rights, title, and interest in and to the '991 patent. Avadel admits that Jazz's marketing and selling of XYWAV® in the United States induces infringement of at least claim 1 of the '991 patent in violation of 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents. Except as so admitted, Avadel denies the allegations in this paragraph.

39. The marketing and selling of XYWAV® in the United States has not induced infringement, does not induce infringement, and would not induce infringement of any valid and enforceable claim of the '991 patent in violation of 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

40. The use of XYWAV® in the United States does not result in direct infringement of any valid and enforceable claim of the '991 patent, either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

41. Jazz seeks, and is entitled to, a declaration that Jazz has not infringed, is not infringing, and will not infringe any valid claim of the '991 patent, directly, indirectly, by inducement, contributorily, literally, under the doctrine of equivalents, or in any other manner.

**ANSWER**: Avadel admits that Jazz purports to seek a declaration of non-infringement, denies that Jazz is entitled to any relief, and except as so admitted, denies the remaining allegations in this paragraph.

42. A judicial declaration is necessary and appropriate so that Jazz may ascertain its rights regarding the '991 patent.

**ANSWER**: Denied.

**Count II:  Declaratory Judgment of Invalidity of the '991 Patent**

43. Jazz incorporates by reference the allegations made in Jazz's Answer, Defenses, and in the preceding Paragraphs of its Counterclaims as if set forth fully herein.

**ANSWER**: Avadel incorporates its responses to the allegations of the preceding paragraphs as if fully set forth herein.

44. An actual, substantial, and continuing justiciable case or controversy exists between Jazz and Avadel over the validity of the claims of the '991 patent.

**ANSWER**: Avadel admits that there is an actual case or controversy between Jazz and Avadel but denies that Jazz's allegations are valid or sustainable.

45. The claims of the '991 patent are invalid for failure to comply with and/or satisfy one or more of the conditions and requirements of patentability specified in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 115, 116 and/or 120, and/or based on other judicially-created bases for invalidation.

**ANSWER**: Denied.

46. The alleged invention of the '991 patent was known or used by others in this country or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for the patent.

**ANSWER**: Denied.

47. The alleged invention of the '991 patent was patented or described in a printed publication in this or a foreign country more than one year prior to the date of the application for patent in the United States.

**ANSWER**: Denied.

48. The alleged invention of the '991 patent does no more than combine familiar elements according to known methods to yield predictable results.  Any alleged improvement over the prior art set forth in the '991 patent is no more than the predictable use of prior art elements according to their established functions.  A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the '991 patent and would have had a reasonable expectation of success in doing so.

**ANSWER**: Denied.

13

49. The subject matter claimed in the '991 patent fails to comply with 35 U.S.C. §§ 102 and/or 103 in that the differences between the subject matter claimed in the patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

**ANSWER**: Denied.

50. The '991 patent does not contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as required by the statutes of the United States to enable any person skilled in the art to practice the invention purported to be covered thereby.

**ANSWER**: Denied.

51. The claims of the '991 patent are invalid and void because they do not inform those skilled in the art about the scope of the invention with reasonable certainty and they do not particularly point out and distinctly claim the subject matter of the alleged invention, as required by 35 U.S.C. § 112.

**ANSWER**: Denied.

52. Jazz is entitled to and seeks a declaration that the claims of the '991 patent are invalid.

**ANSWER**: Avadel admits that Jazz purports to seek a declaration of invalidity, denies that Jazz is entitled to any relief, and except as so admitted, denies the remaining allegations in this paragraph.

### Count III:  Declaratory Judgment of No Willful Infringement of the '991 Patent

53. Jazz incorporates by reference the allegations made in Jazz's Answer, Defenses, and in the preceding Paragraphs of its Counterclaims as if set forth fully herein.

**ANSWER**: Avadel incorporates its responses to the allegations of the preceding paragraphs as if fully set forth herein.

54. Avadel has failed to allege Jazz engaged in any willful infringement or reprehensible conduct and Jazz has engaged in no such conduct, which is a prerequisite for a

finding of willfulness and an award of enhanced damages.

**ANSWER**: Denied.

55. Jazz asks this court to issue a declaratory judgment stating that Jazz's actions do not constitute infringement, let alone willful infringement.

**ANSWER**: Avadel admits that Jazz purports to seek a declaration that its infringement is not willful, denies that Jazz is entitled to any relief, and except as so admitted, denies the remaining allegations in this paragraph.

| | |
|---|---|
| Dated: June 11, 2025 | MCCARTER & ENGLISH, LLP |
| | /s/ *Alexandra M. Joyce* |
| OF COUNSEL: | Daniel M. Silver (#4758) |
| | Alexandra M. Joyce (#6423) |
| Kenneth G. Schuler | Renaissance Centre |
| Marc N. Zubick | 405 N. King Street, 8th Floor |
| Alex Grabowski | Wilmington, Delaware 19801 |
| Manuela Burek | (302) 984-6300 |
| LATHAM & WATKINS LLP | dsilver@mccarter.com |
| 330 North Wabash Avenue, Suite 2800 | ajoyce@mccarter.com |
| Chicago, IL 60611 | |
| (312) 876-7700 | *Attorneys for Plaintiffs and Counterclaim-Defendants Avadel CNS Pharmaceuticals, LLC* and *Flamel Ireland Limited* |
| Herman H. Yue | |
| LATHAM & WATKINS LLP | |
| 1271 Avenue of the Americas | |
| New York, NY 10020 | |
| (212) 906-1200 | |
| | |
| Kelly A. Welsh | |
| LATHAM & WATKINS LLP | |
| 555 Eleventh Street, NW, Suite 1000 | |
| Washington, DC 20004 | |
| (202) 637-2200 | |
| | |
| Daralyn J. Durie | |
| Adam R. Brausa | |
| MORRISON & FOERSTER LLP | |
| 425 Market Street | |
| San Francisco, CA 94105 | |
| (415) 268-7000 | |

ME1\53493855.v1

Kira A. Davis
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200

ME1\53493855.v1